Fowlkes *v.* Heirs and Creditors of P. H. Bowers.

**J. M. FOWLKES,** Adm'r. *v.* Heirs and creditors of P. H. BOWERS, deceased.

ADMINISTRATION. *Insolvent estate. Partnership. Individual and joint creditors. Priority.* In the administration of an insolvent estate the separate creditors are entitled to priority of satisfaction out of the individual property, and the joint creditors of a firm of which he is a member out of the partnership property; but if, after the dissolution of the firm, the deceased had executed as an individual the note of the firm given in liquidation of a partnership debt, the holder of the note is entitled to file it against the estate, and participate in the distribution of the individual assets.

---

FROM FAYETTE.

---

Appeal from the Chancery Court at Somerville. H. J. LIVINGSTON, Ch.

H. C. MOORMAN for complainant.

JONES & GALLAWAY, STAINBACK & RIDDICK, J. P. EDMUNDSON, H. P. HOBSON and E. R. SCRUGGS for defendants.

COOPER, J., delivered the opinion of the court.

Bill by the complainant as administrator of the estate of P. H. Bowers, deceased, to administer the estate as insolvent. W. B. Galbreath & Co. were made defendants and filed several claims against the estate in the form of negotiable paper. The chancellor was of opinion, and so decreed, that the intestate was only liable on the paper produced as one of the firm of

Bowers & Holloway, and that Galbreath & Co. were not entitled to participate in the distribution of the individual assets of the intestate until after the individual creditors were paid.    Galbreath & Co. appealed.

The intestate and J. J. Holloway had been partners in business under the style of Bowers & Holloway.   The firm dissolved on April 21, 1877.    Two of the claims filed 'by Galbreath & Co. were notes for about $3,C00 each, one dated February 10, 1877, and the other March 21, 1877, both signed Bowers & Holloway, per P. H. Bowers.    Two other claims were also promissory notes, one dated May 3, 1877, for $7,866.68, and the other dated May 22, 1877, for $5,002.39, both signed Bowers & Holloway, in liquidation, and also by P. H. Bowers and J. J. Holloway, as individuals.    A fifth claim was in the shape of a bill of exchange, dated May 22, 1877, drawn and accepted by W. B. Galbreath & Co., signed like the last two notes, by the firm in liquidation, and by the individual members.    The answer of Galbreath & Co. states that the deceased was indebted to them in the several claims and accounts specified "as one of the firm of Bowers & Holloway."    It also appeared that these claims had been secured by deeds of trust on real estate of the firm and of its individual members, from the sales of which realty Galbreath & Co. had realized over $9,000.    By the statement of Galbreath & Co., and also by the report of the master in the cause, it appears that the money thus received and a balance of account in favor of Bowers & Holloway on the books of Galbreath & Co., were credited upon
10—VOL. 11.

the aggregate of the above claims, leaving the amount of over $10,000 still due and unpaid. The estate of Bowers was insolvent.

It is conceded that the chancellor's decree is correct as to the two notes executed in the name of the firm during the existence of the partnership. These notes are exclusively partnership debts, the liability of each member as an individual being only such as is created by the partnership relation. This court, influenced more perhaps by its equity than its logical accuracy, has adopted the rule, in the administration of insolvent estates, that the separate creditors of the deceased are entitled to priority of satisfaction out of his individual property, and the joint creditors of a firm of which he was a member out of the partnership property: *Jackson Ins. Co.* v. *Partee,* 9 Heis., 296; *Richardson* v. *Richardson,* 1 Leg. Rep., 99; *Pennington* v. *Bell,* 4 Sneed, 200. The doubt is as to the chancellor's rulings on the other claims.

These claims are in the form of negotiable securities executed after the dissolution of the firm both in the firm name and in the names of the partners as individuals. The liabilities for which these securities were given had no doubt been created by the firm, and were partnership debts. The partnership liability was continued by the use of the firm name with the assent of both partners: *Hatton* v. *Stewart,* 2 Lea, 233. Without such assent, the signature of the firm would only have bound the member of the firm who wrote it, and the debt would have become his individual debt: *Martin* v. *Kirk,* 2 Hum., 529. But the negotiable

Fowlkes *v.* Heirs and Creditors of P. H. Bowers.

instruments in question were also signed by each member of the firm as an individual. This he might do of course, his liability for the original debt and the extension of time of payment constituting a sufficient consideration. The legal effect was not only to ratify the use of the firm name with a view to keep alive the partnership obligation, but to make the particular debt the debt of the signer as an individual. There is no proof to show, even if the proof were admissible, that the individual signatures were not intended to be, what in law they plainly import, personal obligations. Thereafter, the appellants were not only joint creditors of the firm, but separate creditors of each member of the firm as individuals. If a person execute a valid negotiable security as an individual he and his property become liable accordingly, and the result cannot be changed because a partnership' of which he is a member also executes the instrument. The legal consequences of the act was necessarily the same in either case.

The decree below must be reversed, and the balance of the claim of the appellants allowed as a proper claim against the estate of the intestate, and the cause remanded for further proceedings. The costs of this court will be paid out of the assets of the estate.

TURNEY, J., dissents.

COOPER, J., upon the petition to rehear, delivered the following [dissenting] opinion:　　　　　　　　( ? )

In support of the petition for rehearing in this case, a full and able argument is submitted upon pre-

cisely the same grounds as those assumed in the original argument. The contention is, as before, that the only effect of the renewal of the negotiable securities of the form in their new form was to continue the firm liability. And the argument is thus epitomized at its close: 1. That partnership debts cannot be converted into individual debts, or into partnership and individual debts, without showing both a sufficient consideration, and the mutual and deliberate consent of both parties to the conversion. 2. That the form of the two notes and the draft in the record affords no evidence of any interest to convert the debts evidenced thereby, because their firm consists equally as well with the theory of non-conversion as it does with that of conversion. The conclusion of the court was that by the new securities the old liability of the firm was continued, and the members of the firm became individually liable. The positions of the learned counsel were squarely, although briefly met. The argument now made, and the authorites now cited only bear on those positions. But the first position merely means that a creditor of a partnership cannot be deprived of his rights against the partnership except by his consent deliberately given. It is not inconsistent with the right of the creditors to add to the liability of the firm the individual liability of the members of the firm. And the second position is, we think, not a logical sequence of the premises, for it requires the court to treat the individual liability as if it had never been assumed. The very object of the change of form must have been to give the creditors the benefit of

the legal consequences of the new form. "And why," to use the language of Judge Story, "should any court deprive the creditor of the very benefit which the debtors had stipulated to give him, or restrain him from using all his rights?" Sto. on Part., sec. 389. The only American authorities adduced in the analogous case of bankruptcy decide that a creditor, who holds a note signed by a firm and an individual member, may prove the claim against the assets of the firm, and also against the estate of the partner: *Emery* v. *Canal Nat. Bank,* 7 Bank. Reg., 217; *Mead* v. *National Bank,* 7 Am. Law Reg., 818; *Farman's Case,* 6 Boston Law Rep., 21; *In re Bigelow,* 2 Bank. Reg., 371. And even if the creditors were forced to elect under the English doctrine, they have elected in this case to proceed against the estate of the individual member. Rehearing refused.